**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

IN RE:

APPLICATION OF OLGA KURBATOVA         Case No. _____
FOR AN ORDER UNDER 28 U.S.C. §
1782 TO TAKE DISCOVERY FROM
CREDIT SUISSE AG

**APPLICATION FOR AN ORDER**
**TO TAKE DISCOVERY PURSUANT TO 28 U.S.C. § 1782**
**AND INCORPORATED MEMORANDUM OF LAW**

Applicant Olga Kurbatova ("Ms. Kurbatova" or the "Applicant") respectfully submits

this Application for an Order to Take Discovery Pursuant to 28 U.S.C. § 1782 (the

"Application") from Credit Suisse AG ("Credit Suisse").  The requested relief is for the

purpose of obtaining limited, but critical, discovery for use in pending criminal and

reasonably contemplated civil proceedings before Swiss courts.

**PRELIMINARY STATEMENT**

This application for discovery stems from a massive criminal scheme perpetrated by

Patrice Lescaudron, a Credit Suisse bank employee responsible for managing the assets of

wealthy individuals.  After engaging in improper and unauthorized trading in the accounts of

his clients, Mr. Lescaudron tried to cover up the resulting losses by transferring money from

the account of one of his clients to other customer accounts that had sustained losses.  Along

the way, he also diverted amounts for his own profit, enriching himself though various

investment schemes in which he had some of his clients invest.  On February 9, 2018, a Swiss

court sentenced Mr. Lescaudron to five years' imprisonment for his crimes and imposed

damages and fines on him totaling approximately 150 million Swiss francs, or about US

$150.5 million at current conversion rates.

The Applicant, Ms. Kurbatova, is one of Mr. Lescaudron's victims, having suffered approximately US $35 million in losses on improper investments.  For the reasons set forth below, the Court should grant Ms. Kurbatova's application under 28 U.S.C. § 1782 ("Section 1782") seeking discovery from Credit Suisse related to Mr. Lescaudron's activities as the bank employee in charge of Ms. Kurbatova's account.

*First*, the Application meets the statutory requirements of Section 1782.  Ms. Kurbatova seeks discovery from Credit Suisse, a bank that a court in this District has already determined in another case is "found" here.  The materials sought are "for use" in pending and contemplated foreign proceedings, including criminal proceedings and investigations arising out of Mr. Lescaudron's activities and contemplated civil claims by Ms. Kurbatova against Mr. Lescaudron and Credit Suisse.  Ms. Kurbatova is an "interested person" in these foreign proceedings, as she is a Plaintiff with the right to submit evidence in the criminal proceedings (including on appeal) and will be the claimant in the contemplated civil claims.

*Second*, as explained below, the discretionary factors that this Court should consider in determining whether to grant an application under the United States Supreme Court's decision in *Intel Corp. v. Advanced Micro Devices, Inc.* favor granting the Section 1782 application.

Accordingly, and for the reasons discussed below, the Court should grant this Application.

## I.      JURISDICTION

1.      This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1782(a).

## II.    RELEVANT PARTIES

### A.  The Applicant, Olga Kurbatova

2.     The Applicant is an account holder at Credit Suisse and the victim of actions of Credit Suisse employee Patrice Lescaudron.  *See* October 29, 2018 Declaration of Olga Kurbatova ("Kurbatova Decl.") ¶ 2, a true and correct copy of which is attached hereto as **Exhibit A**.

### B.  Credit Suisse

3.     Credit Suisse is a Swiss bank with a principal address in Switzerland, but that has a physical office in this District, is registered to do business in Florida, and conducts banking and financial business from Florida.  Attached hereto as **Exhibit B** is a true and correct copy of Credit Suisse's Florida Department of State, Division of Corporations registration page, indicating that its registration in the state is "active."  Also attached hereto as **Exhibit C** is a true and correct copy of a page on Credit Suisse's website, indicating that it has an office located at 777 S Flagler Drive, West Palm Beach, FL 33401.  Ms. Kurbatova is a customer of Credit Suisse, which employed Mr. Lescaudron.  (Kurbatova Decl. ¶ 10.)

### C.  Patrice Lescaudron

4.     Mr. Lescaudron worked as a member of Credit Suisse's Private Banking Department for Russia / Ukraine / Central Asia.  (Kurbatova Decl. ¶ 10.)  He was the relationship manager for Ms. Kurbatova's account at Credit Suisse.  *Id.*  As discussed in further detail below, he is currently the subject of several Swiss criminal proceedings and investigations related to his conduct in relation to the account of Ms. Kurbatova and other Credit Suisse clients and already has been found guilty of certain charges.  (Straub Decl. ¶¶ 4, 6, 24, a true and correct copy of which is attached hereto as **Exhibit D**.)

### III.   FACTUAL BACKGROUND

#### A.  Ms. Kurbatova's Relationship with Credit Suisse and Mr. Lescaudron

5.      Ms. Kurbatova has an account at Credit Suisse called the DREAM account, which she opened on April 26, 2005.  The DREAM account is and always has been nondiscretionary, meaning that only she or her powers of attorney could authorize trades in the account. (Kurbatova Decl. ¶ 10.)

6.      As the relationship manager for the DREAM account, Mr. Lescaudron made investment recommendations to Ms. Kurbatova.  Neither Ms. Kurbatova nor her staff has any finance experience, so she trusted Mr. Lescaudron's advice and believed him to be an expert acting under Credit Suisse's supervision, consistent with Credit Suisse's policies, and with all investments having met Credit Suisse's approval after due analysis by Credit Suisse.  (*Id.* ¶¶ 10-12.)  Indeed, Credit Suisse held Mr. Lescaudron out as acting under its authority.  (*Id.* ¶ 12.)

#### B.  The Misconduct

7.      In reality, Mr. Lescaudron was engaged in rampant misconduct. The scheme began in or around 2007, when Mr. Lescaudron made unauthorized investments on behalf of some of his clients, including Ms. Kurbatova, that did poorly. To hide the losses, he then transferred the assets of another wealthy client into his victims' accounts without permission and made other unauthorized investments to hide the losses.[1]  (*See also, e.g.*, Kurbatova Decl. ¶¶ 14, 20-21, 27.)

8.      According to the press, Mr. Lescaudron "orchestrat[ed] a scheme that resulted in damages of 143 million Swiss francs ([US] $152 million) as he diverted cash from client

---

[1] *See* John Letzing, *Oligarch Says Credit Suisse Mismanaged His Money¸* The Wall Street Journal, February 18, 2016, https://www.wsj.com/articles/angry-oligarch-claims-credit-suisse-took-his-money-1455810000

accounts to cover bad trades in one of the biggest financial crimes in Swiss History."[2]  In the resulting criminal case against him in Swiss court, he received a sentence of five years in prison and was ordered to pay damages of 130 million Swiss francs and 22 million francs in compensatory claim.[3]

9.      Credit Suisse (which, as a foreign private issuer of U.S. exchange-traded securities, files periodic reports with the U.S. Securities and Exchange Commission ("SEC")) disclosed the existence of Mr. Lescaudron's scheme and its internal investigation of the same to its U.S. investors and the SEC on March 24, 2016 in its 2015 Form 20-F, stating:

> Several clients have claimed that a former relationship manager in Switzerland had exceeded his investment authority in the management of their portfolios, resulting in excessive concentrations of certain exposures and investment losses. Credit Suisse AG is investigating the claims, as well as transactions among clients.  Credit Suisse AG filed a criminal complaint against the former relationship manager with the Geneva Prosecutor's Office upon which the prosecutor initiated a criminal investigation.  Several clients of the former relationship manager also filed criminal complaints with the Geneva Prosecutor's Office.

Relevant excerpts of Credit Suisse's 2015 Form 20-F are attached hereto as **Exhibit E**, and relevant excerpts of Credit Suisse's 2016 and 2017 Form 20-Fs, which contain similar disclosures, are attached hereto as **Exhibits F** and **G**, respectively.

10.      With regard to Ms. Kurbatova specifically, to perpetrate his scheme, Mr. Lescaudron lied about the nature and quality of the investments, forged Ms. Kurbatova's signature on authorization forms and made investments without her prior consent. (Kurbatova Decl. ¶¶ 13-18, 20-21.)  For example, Ms. Kurbatova believes the investments in at least the following entities or instruments were improper:

- Copernic Global Fund Ltd.;

---

[2] Hugo Miller and Gaspard Sebag, *Ex-Credit Suisse Banker Guilty as Fraud Tops $150 Million,* Bloomberg, February 9, 2018, https://www.bloomberg.com/news/articles/2018-02-09/ex-credit-suisse-banker-found-guilty-of-fraud-by-geneva-court.
[3] *See id.*

- Hudson River Russia Fund (Daniloff Capital) (Hudson River Ltd.);

- Lyxor [X3 Dynamic Leveraged Fund] (issued by SGA Societe Generale Acceptance N.V., managed by Lyxor Asset Management) (ISIN XS0348154021);

- Meinl (Meinl European Land Ltd., Meinl Airports International Ltd., Meinl International Power Ltd., "Down and Out Call" Certificates relating to Meinl European Land (ISIN GB00B1WQSS64);

- Carpathian Resources Limited;

- Dynamic Leverage Certificates due 2012 linked to the Diversified Credit Suisse Portfolio 01 and issued on March 28, 2007 by Credit Suisse International (ISIN XS0276525143); and

- Principal Protected Notes due 2014 with Formulaic Dynamic Asset Allocation linked to a dedicated hedge fund portfolio ("Diversified Credit Suisse Portfolio 04"), issued on May 27, 2008 by Credit Suisse International (ISIN XS0364496165).

(*Id.* ¶ 17.)

**C. The Foreign Proceedings**

11.    As noted above, Mr. Lescaudron has already been tried and found guilty of certain crimes.  (Straub Decl. ¶ 24.)  This judgment is currently under appeal by Mr. Lescaudron himself, as well as several plaintiffs, including Ms. Kurbatova.  (*Id.* ¶ 25.)  That, however, is not the only litigation related to his misconduct. Ms. Kurbatova seeks discovery here in aid of the following proceedings:

**a. Pending Criminal Investigation**

12.    Two criminal investigations concerning Mr. Lescaudron's scheme are pending.  (Straub Decl. ¶ 6.)

13.    First, the Swiss prosecutor overseeing the criminal case against Mr. Lescaudron in Swiss court opened proceedings to investigate the forgeries that Ms. Kurbatova has alleged in a criminal complaint she filed against Mr. Lescaudron.  (*Id.* ¶ 7.) The prosecutor decided that the evidence against Mr. Lescaudron for those forgeries was insufficient to take to trial along with the other charges for which Mr. Lescaudron was tried

(and ultimately convicted).  (*Id.*)  The prosecutor therefore severed Ms. Kurbatova's forgery allegations and is investigating them separately.  (*Id.*)  Ms. Kurbatova is entitled to submit evidence for the prosecutor's consideration in the investigation.  (*Id.*)  Indeed, under Swiss law, by filing a criminal complaint, a person suffering harm from a crime obtains the right to file evidence in the criminal case.  (*Id.* ¶ 11.)

14.     Second, the Swiss prosecutor, before sending Mr. Lescaudron's case to trial, opened a separate case to investigate the potential criminal liability of Credit Suisse in relation to Mr. Lescaudron's wrongdoing.  (*Id.* ¶ 8.)  Ms. Kurbatova is a private plaintiff in this investigation and has all procedural rights, including the right to submit evidence obtained from this 1782 Application for the prosecutor to consider in determining whether to charge Credit Suisse.  (*Id.* ¶ 9.)

### b. Criminal Proceedings Against Mr. Lescaudron

15.     Ms. Kurbatova filed a criminal complaint against Mr. Lescaudron in Switzerland.  (Straub Decl. ¶ 14.)  Ms. Kurbatova's complaint, dated August 4, 2016, alleged misappropriation, fraud, criminal mismanagement, and forgery of documents, as well as any other crime the investigation could reveal.  (*Id.*)  At least five other victims of Mr. Lescaudron's filed criminal complaints.  (*Id.* ¶ 15.)

16.     The prosecutor charged Mr. Lescaudron in Swiss criminal court with fraud, forgeries of documents, and criminal mismanagement.  (*Id.* ¶17.)  These charges, however, did not cover the full extent of the scheme that Ms. Kurbatova alleged and omitted many aspects of the scheme that some of the complainants had asserted.  (*Id.* ¶ 18.)

17.     Ms. Kurbatova appealed the prosecutor's decision not to include the full extent of the alleged scheme by Mr. Lescaudron (the "First Appeal").  (*Id.* ¶ 19.)

18.     While that appeal was recently denied, Ms. Kurbatova has further appealed this decision to the Swiss Federal Tribunal.  (*Id.* ¶ 20.)

19.      Regardless of the outcome of the First Appeal, however, Ms. Kurbatova can and will provide any evidence obtained from this 1782 Application to the Swiss prosecutor. (*Id.* ¶ 21.)  If Ms. Kurbatova wins before the Swiss Federal Tribunal, the underlying case against Mr. Lescaudron will continue, and she may use evidence obtained from this 1782 Application in the continuation of that case.  (*Id.* ¶ 20.)  If Ms. Kurbatova loses before the Swiss Federal Tribunal, the case would be formally closed; however, she can seek to reopen the part of the case related to the charges the prosecutor did not bring.  (*Id.* ¶¶ 20-21.)  In any such attempt to reopen the case, Ms. Kurbatova would also be entitled to submit evidence obtained from this 1782 Application to the Swiss prosecutor.  (*Id.* ¶ 21.)

20.      Meanwhile, Mr. Lescaudron proceeded to trial on the charges that the prosecutor did bring.  (*Id.* ¶ 23.)  On February 9, 2018, the Swiss court found him guilty of certain crimes against certain victims and not guilty of certain other crimes.  (*Id.* ¶ 24.)  Some parties, including Mr. Lescaudron and Ms. Kurbatova, have appealed the verdict of the criminal court (the "Second Appeal"), meaning there will be a second trial before a Swiss criminal court of appeal on the same charges at the appellate level.  (*Id.* ¶ 25.)  In such an appellate trial (and in preparation of the same), Ms. Kurbatova will be entitled to file new evidence.  (*See id.* ¶ 26.)  Ms. Kurbatova, however, is under some time pressure to obtain and file this evidence as the appellate trial will take place from January 21, 2019 to January 25, 2019.  (*Id.* ¶ 27.)

### c.  Contemplated Civil Proceedings

21.      Ms. Kurbatova is also contemplating civil claims in Switzerland against Mr. Lescaudron and Credit Suisse for breach of their obligations toward her in relation to the scheme perpetrated on her to her detriment.  (*See* Kurbatova Decl. ¶¶ 8-9; Straub Decl. ¶¶ 28-34.)  For example, Credit Suisse may be liable to Ms. Kurbatova on the theory that the bank is directly liable for Mr. Lescaudron's misconduct.  (Straub Decl. ¶ 29, 31.)  Under Swiss

law, civil claimants must identify and (with limited exceptions) submit the evidence they intend to provide at the time of filing the claim.  (*Id.* ¶ 30.)

22.     Ms. Kurbatova intends to file her civil claims against Mr. Lescaudron and Credit Suisse as soon as possible after obtaining the necessary evidence, including from this Application, and has retained Swiss counsel to represent her in these matters.  (Kurbatova Decl. ¶¶ 8-9.)

## IV.     RELIEF REQUESTED

23.     Ms. Kurbatova seeks to gather evidence from Credit Suisse to use: (i) against Mr. Lescaudron in the pending Swiss criminal investigations into the forgery charge, (ii) in the investigation related to Credit Suisse; (iii) in the appellate criminal trial of Mr. Lescaudron (*i.e.*, the Second Appeal), currently scheduled for January 2019; (iv) in connection with the First Appeal (either after the underlying case is reopened by the Swiss Federal Tribunal if her appeal is successful, or in a post-appeal attempt to reopen the proceedings if her appeal is rejected, as explained above); (v) in connection with the contemplated civil proceeding against Mr. Lescaudron and; (vi) in connection with the contemplated civil proceeding against Credit Suisse.

24.     In support of these proceedings, Ms. Kurbatova seeks permission to issue the subpoena for documents and testimony against Credit Suisse attached hereto as **Exhibit H**.

## V.     MEMORANDUM OF LAW

To obtain discovery under Section 1782, an applicant must satisfy two sets of criteria.  First, the applicant must meet the requirements of the statute itself, which allows for discovery by an "interested person" in "the district in which [the discovery target] resides or is found . . . for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a).  Second, the court, in its exercise of discretion and applying certain relevant factors, must find that granting discovery would be appropriate.  *See Consorcio Ecuatoriano*

*de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc.*, 747 F.3d 1262, 1271 (11th Cir. 2014); *Intel Corp. v. Advanced Micro Devices, Inc.,* 542 U.S. 241, 264-65 (2004).

The twin goals of Section 1782 are "providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to U.S. courts." *Intel,* 542 U.S. at 252; *see also, e.g.*, *In re Pimenta,* 942 F. Supp. 2d 1282, 1289 (S.D. Fla. 2013) (finding the granting of a Section 1782 application for discovery in aid of a Brazilian probate proceeding "serves to support the twin aims of the statute"). To that end, as the Eleventh Circuit emphasized in *Consorcio Ecuatoriano*, "[t]he history of Section 1782 reveals Congress' wish to *strengthen* the power of district courts to respond to requests for international assistance." 747 F.3d at 1269 (citing *Lo Ka Chun v. Lo To,* 858 F.2d 1564, 1565 (11th Cir. 1988)). Indeed, "the statute has, over the years, been given increasingly broad applicability." *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012) (citations and quotations omitted).

Because Ms. Kurbatova meets both sets of criteria, the Court should grant the Application.

### A. The Application Meets the Statutory Prerequisites for Relief Under Section 1782.

Section 1782 authorizes discovery by litigants or other "interested persons" in proceedings before foreign and international tribunals. In pertinent parts, it states:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal ... The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C. § 1782(a). Thus, Section 1782 has four prima facie requirements that must be met before a district court is authorized to grant an application for discovery under the statute:

(1) the request must be made "by a foreign or international tribunal,' or by 'any interested person'";

(2) the request must seek evidence, whether it be the "testimony or statement" of a person or the production of "a document or other thing";

(3) the evidence must be "for use in a proceeding in a foreign or international tribunal"; and

(4) the person from whom discovery is sought must reside or be found in the district of the district court ruling on the application for assistance.

*Consorcio Ecuatoriano*, 747 F.3d at 1269.

The Application easily satisfies each of these four prima facie requirements.

*First,* Ms. Kurbatova is an "interested person" within the meaning of the statute. An interested person can be a litigant, but also a plaintiff in a foreign proceeding or anyone who "possess[es] a reasonable interest in obtaining [judicial] assistance." *Intel*, 542 U.S. at 256 (holding that a party that was the complainant in a European Commission investigation was an "interested person" under Section 1782). Ms. Kurbatova is an interested person in each of the foreign proceedings here. She is a plaintiff in the pending Swiss criminal case against Mr. Lescaudron and the criminal investigations against Mr. Lescaudron (for forgery) and Credit Suisse. (*See* Straub Decl. ¶¶ 4, 7-8.) She will also be a litigant in the contemplated Swiss civil proceeding against Mr. Lescaudron and Credit Suisse. (*See id.* ¶¶ 28-29.)

*Second*, the Application seeks evidence, which has been defined in the context of Section 1782 as the "'testimony or statement' of a person or the production of 'a document or other thing.'" *Consorcio Ecuatoriano*, 747 F.3d at 1269. The Application seeks both a deposition and documents from Credit Suisse that will evidence misconduct by both Mr. Lescaudron and Credit Suisse. *See supra* Section IV.

*Third,* the evidence is "for use in a proceeding in a foreign . . . tribunal." This "for use" requirement imposes a de minimis burden on the applicant to show that the requested discovery has some relevance to the foreign proceeding. *See In re Application Pursuant to*

*28 U.S.C. Section 1782 for an Order Permitting Christen Sveaas to Take Discovery from Dominique Levy, L&M Galleries*, 249 F.R.D. 96, 107 (S.D.N.Y. 2008) (the standard for relevance is "broadly permissive").   Ms. Kurbatova will use the evidence in the six proceedings outlined above.   For example, in the Second Appeal, as explained above, Ms. Kurbatova will be entitled to file new evidence until the end of the second trial, which will take place in January 2019.   (*See* Straub Decl. ¶¶ 25-27.)   Similarly, with regard to the First Appeal, she will either submit new evidence in continuation of the case if her appeal is granted or will file new evidence with the Prosecutor's Office in an effort to have the case re-opened if her appeal is rejected.   (*See id.* ¶¶ 20-21.)

Further, Ms. Kurbatova will use the evidence in the criminal investigations the Swiss prosecutor is undertaking into Credit Suisse and the forgery claims against Mr. Lescaudron for which Ms. Kurbatova is a complainant.   (*See* Straub Decl. ¶¶ 6-10; Kurbatova Decl. ¶¶ 8-9.)   The statute itself specifically includes "criminal investigations conducted before formal accusation" within the kinds of foreign proceedings for which Section 1782 allows discovery.  *See* 28 U.S.C. § 1782(a); *see also Intel*, 542 U.S. at 259 (holding that proceedings that have not "progressed beyond the investigative stage" can qualify for discovery under Section 1782); *In re Clerici*, 481 F.3d 1324, 1333 (11th Cir. 2007) (noting that evidence obtained through Section 1782 discovery can be used in criminal investigations conducted before formal accusation).   And as a plaintiff, Ms. Kurbatova is entitled to submit evidence for the prosecutor to consider as part of the investigation.   (*See* Straub Decl. ¶¶ 7, 9, 11.)

Ms. Kurbatova will also use the evidence in the contemplated civil cases against Mr. Lescaudron and Credit Suisse.   Foreign proceedings that are "within reasonable contemplation" can be the basis for a Section 1782 application where there are "reliable indications of the likelihood that proceedings will be instituted within a reasonable time."  *Consorcio Ecuatoriano*, 747 F.3d at 1270.   Ms. Kurbatova has submitted a declaration stating

that she will commence proceedings against Mr. Lescaudron and Credit Suisse in Switzerland as soon as she obtains evidence from this Application (and others) and that she needs the evidence before filing her claim because, under Swiss law, she must submit all documentary evidence along with her claim.  (*See* Kurbatova Decl. ¶¶ 8, 9; *See* Straub Decl. ¶ 30.) *Consorcio Ecuatoriano*, 747 F.3d at 1270-71 (holding that foreign proceedings were reasonably contemplated where the Section 1782 applicant had submitted a declaration stating its intent to commence proceedings in Ecuador and explained that "under Ecuadorian law, it must submit its evidence with the pleading at the time it commences the civil action"). Moreover, Ms. Kurbatova's retention of Swiss counsel, criminal complaints, and investigation into the scheme, as this Application sets out, further shows that a claim is reasonably contemplated.  *See Consorcio Ecuatoriano*, 747 F.3d at 1271 ("In light of [the Section 1782 applicant's] facially legitimate and detailed explanation of its ongoing investigation, its intent to commence a civil action . . ., and the valid reasons for [the applicant] to obtain the requested discovery under the instant section 1782 application before commencing suit, we can discern no error in the district court's determination that [the applicant's] foreign civil proceedings . . . were 'within reasonable contemplation.'").

*Fourth,* Credit Suisse is found in this district.  Indeed, a court in this district has already made that determination.  *See Fuhr*, No. 13-21598-CIV, 2014 WL 12599830, at *2 (S.D. Fla. Feb. 19, 2014) ("This Court further found that Credit Suisse could be deemed 'found' in this District since it has a physical office address within this District, it is registered to do business in the State of Florida and it conducts banking/financial business from Florida."), *rev'd on other grounds*, *Fuhr v. Credit Suisse AG*, 687 F. App'x 810 (11th Cir. 2017).  Credit Suisse is registered to business in Florida and has a physical office here. *See* Exhibits C, D.

13

### B.  The Discretionary *Intel* Factors Weigh in Favor of Granting Discovery Under Section 1782

In deciding whether to exercise its discretion to permit the Section 1782 discovery, the Court should consider the following factors: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding;" (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;" (3) whether the request is "an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States;" and (4) whether the discovery is "unduly intrusive or burdensome."  *Intel*, 542 U.S. at 264–65.  Here, these factors support granting the Application.

### 1.  Whether the Discovery Target Is a Party to a Foreign Proceeding

The first *Intel* factor looks to whether "the person from whom discovery is sought is a participant in the foreign proceeding."  The Supreme Court explained that when the discovery target is a participant in the foreign proceeding, "the need for § 1782 aid is *generally* not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad" because "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence."  *Id.* at 264 (emphasis added).  But being a participant in the pending or contemplated foreign proceeding is not dispositive, and federal courts have ordered Section 1782 discovery from a participant when the requested material is not obtainable in that proceeding.  *See, e.g.*, *In re Procter & Gamble Co.*, 334 F. Supp. 2d 1112, 1114 (E.D. Wis. 2004) (granting Section 1782 application even though the applicant and respondent were both parties to foreign proceedings because it was "unclear whether [the applicant] could obtain discovery in [the foreign proceeding] in time to use it"); *In re Carsten Rehder Schiffsmakler Und Reederei Gmbh & Co.*, No. 6:08MC108-ORL-35DAB, 2008 WL 4642378, at *2 (M.D. Fla. Oct. 17, 2008) (granting Section 1782 application even though

applicant and respondent were both parties to foreign proceedings because "China's rules relating to discovery are not comparable to our own and . . . obtaining the information without this Court's assistance is by no means assured"); *In re Letter Request from Dist. Ct. Stara Lubovna*, No. 3:09MC2034MCR, 2009 WL 3711924, at *2 (M.D. Fla. Nov. 5, 2009) (finding that first *Intel* factor weighed in favor of applicant, even though respondent was a party to the foreign proceeding, because the respondent had left the foreign court's jurisdiction and, as such, the foreign court could not order discovery from him).

Similarly here, despite Ms. Kurbatova's requests, the prosecutor has not sought the evidence the Application seeks from Credit Suisse in his investigation, and as discussed, Ms. Kurbatova requires the evidence in the very near term to support the Second Appeal, which is expected to be heard in just over three months. As in *In re Procter & Gamble*, it is unclear (and, in fact unlikely) whether Ms. Kurbatova could obtain discovery overseas in time, making discovery through Section 1782 appropriate. Further, Ms. Kurbatova needs the requested materials before she can commence her civil cases against Mr. Lescaudron and Credit Suisse—and thus before the Swiss courts would have jurisdiction over them and the ability to compel discovery from them in connection with those proceedings. Accordingly, this *Intel* factor does not preclude the requested relief.

Moreover, to the extent that Credit Suisse is not a party to the actions listed above, *e.g.*, the civil action against Mr. Lescaudron, this factor weighs in favor of granting Ms. Kurbatova's application.

## 2.  Receptivity of Foreign Proceedings to U.S. Judicial Assistance

The receptivity of foreign proceedings to U.S. judicial assistance weighs in favor of Section 1782 discovery unless there is "authoritative proof that a foreign tribunal would *reject* evidence obtained with the aid of § 1782." *In re MTS Bank*, No. 17-21545-MC, 2017 WL 3276879, at *8 (S.D. Fla. Aug. 1, 2017). Here, not only is there no such proof, Ms.

Kurbatova has submitted a declaration of a Swiss law expert definitively demonstrating that any evidence she obtains through this Application will be usable in any of the six Swiss proceedings, even though the admissibility of evidence in a foreign proceeding is not required to support an application under Section 1782. *See In re N. Am. Potash, Inc.*, No. 12-20637-CV, 2012 WL 12877816, at *8 (S.D. Fla. Nov. 19, 2012) ("[F]or purposes of § 1782, district courts should consider neither discoverability or admissibility in the foreign proceeding."), *report and recommendation adopted*, No. 12-20637, 2013 WL 12113190 (S.D. Fla. Mar. 13, 2013).

### 3. Whether Request Is an Attempt to Circumvent Foreign Proof-Gathering Restrictions

The Application is not an attempt to circumvent foreign proof-gathering restrictions. In assessing this factor, "courts need not determine if an applicant has exhausted its discovery attempts abroad," and "the fact that a § 1782 application requests documents that would not be discoverable by the foreign court if those documents were located in the foreign jurisdiction is not enough to render the application a 'circumvention' of foreign rules." *See In re N. Am. Potash*, 2012 WL 12877816, at *11. Rather, "this factor suggests that a district court should be vigilant against a petitioner's attempt to 'replace a [foreign] decision with one by [a U.S.] court.'" *Id.* (alteration in original). Ms. Kurbatova has made no such attempt here. She is simply seeking documents for use in the Swiss proceedings that the prosecutor has not sought in the foreign proceedings. Moreover, should there at any point be questions concerning the admissibility under Swiss law of the discovery sought by Ms. Kurbatova, those questions are best resolved by the Swiss court rather than a U.S. district court. As one court has explained, "[s]ince foreign courts could always rule upon the propriety of reliance on evidence obtained through the cooperation extended by American courts when it was presented to them, the drafters of section 1782 regarded it as both unnecessary and undesirable to let the propriety of discovery with the aid of an American court depend on

discoverability and admissibility under foreign law." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1101 (2d Cir. 1995) (quoting Hans Smit, *Recent Developments in International Litigation*, 35 S. Tex. L. Rev. 215, 235–36 (1994)).

### 4.   Whether Request Is Unduly Burdensome

The request in this Application is not unduly burdensome.  Ms. Kurbatova seeks a narrow set of documents and a limited deposition.  The vast majority of requests seek documents relating to Ms. Kurbatova or her account and the investments having taken place in it, and the others seek information connected to Mr. Lescaudron, information that one would expect that Credit Suisse has already collected as part of its own investigation into Mr. Lescaudron's conduct.  "Once discovery is authorized under § 1782, the federal discovery rules, Fed. R. Civ. P. 26-36, contains the relevant practices and procedures for the taking of testimony and the production of documents."  *In re Clerici*, 481 F.3d at 1336.  Rule 26 "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  Under the Federal Rules of Civil Procedure, requests to produce can be directed at any document or thing in the possession, custody, or control of the producing party.  Fed. R. Civ. P. 26(b).

Moreover, the fact that Credit Suisse may need to bring information into the district is not a reason to deny the application, as that is expressly permitted in the Eleventh Circuit. *Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194, 1200 (11th Cir. 2016) (finding that there is nothing in Section 1782 that limits its reach to documents held in the U.S. and regular discovery rules require production of extra-territorial documents); *see, e.g.*, *In re Godfrey*, No. 17-21631-CV, 2018 WL 1863749, at *11 (S.D. Fla. Feb. 22, 2018) (noting that the "Eleventh Circuit has held 'that the location of responsive documents and electronically stored information—to the extent a physical location can be discerned in this digital age—

does not establish a per se bar to discovery under § 1782'" and that "[i]t is thus well established in this Circuit that § 1782 has 'extraterritorial reach'" (citation omitted)).

## VI.    CONCLUSION

WHEREFORE, Applicant Ms. Kurbatova prays for an order of this Court:

(1) Granting discovery pursuant to Section 1782, including a document and deposition subpoena as detailed in the proposed subpoena attached to this Application;

(2) Ordering that Adriana Riviere-Badell be authorized to issue the subpoenas attached to this application to obtain such discovery pursuant to the Federal Rules of Civil Procedure;

(3) Granting such other and further relief as this Court deems just and proper.


Dated: November 13, 2018                    Respectfully submitted,

                                            **KOBRE & KIM LLP**

                                            s/ ___Adriana Riviere-Badell____
                                            Adriana Riviere-Badell
                                            Kobre & Kim LLP
                                            201 South Biscayne Boulevard, Suite 1900
                                            Miami, Florida 33131
                                            Telephone: (305) 967-6100
                                            Facsimile: (305) 967-6120

                                            Steven W. Perlstein (*pro hac vice* motion forthcoming)
                                            steven.perlstein@kobrekim.com
                                            Jonathan D. Cogan (*pro hac vice* motion forthcoming)
                                            jonathan.cogan@kobrekim.com
                                            Kelly Spatola (*pro hac vice* motion forthcoming)
                                            kelly.spatola@kobrekim.com
                                            Kobre & Kim LLP
                                            800 Third Avenue
                                            New York, New York 10022
                                            Telephone: (212) 488-1200
                                            Facsimile: (212) 488-1220

                                            *Attorneys for Applicant Olga Kurbatova*